**UNITED STATES of America, Appellee,**

v.

**Vincent M. SAPERE, Appellant.**

**No. 304, Docket 75-1278.**

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1975.

Decided Feb. 13, 1976.

Eugene H. Kaplan, Waterbury, Conn. (Frederick W. Krug, Waterbury, Conn., on the brief), for appellant.

---

Paul E. Coffey, Sp. Atty., U. S. Dept. of Justice, Washington, D. C. (Peter C. Dorsey, U. S. Atty., New Haven, Conn., D. Conn., Jeffrey M. Johnson, Sp. Atty., U. S. Dept. of Justice, Boston, Mass., of counsel), for appellee.

Before WATERMAN, OAKES and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

■ This appeal presents the question whether evidence gleaned from illegal wiretaps in a Department of Justice gambling offense investigation may be found to have formed a portion, and hence tainted the basis, of an Internal Revenue Service criminal tax investigation. That investigation, of appellant Vincent Sapere and his father, Dominic Sapere, led to the former's conviction for willful failure to file a tax return under 26 U.S.C. § 7203. Appellant entered a plea of nolo contendere, before Judge T. Emmet Clarie in the United States District Court for the District of Connecticut, to the 1970 count in a four-count indictment which charged him with willfully failing to file income tax returns for the years 1967–1970. This plea was made upon an agreement with the Government that his right would be preserved to appeal the denial of his motions to suppress evidence and dismiss the charges against him on the grounds of taint.[1] Judge Clarie entered a finding of guilty on the plea and the remaining counts were dismissed. Appellant was sentenced to one year's imprisonment, to be suspended after 30 days, with one year's probation, and fined $2,500. We affirm.

The testimony of nine Government officers adduced during the five day evidentiary hearing on appellant's motions revealed the following history of the investigations and prosecutions of appellant by the two different agencies here. Vincent Sapere was indicted, along with his father, Dominic Sapere, his uncle Emil Sapere, and others, on May 3, 1972, for conducting a gambling business in violation of 18 U.S.C. § 1955. This prosecution was conducted by the Hartford Field Office of the Boston Strike Force, a special section of the Department of Justice assigned to investigate and prosecute organized crime. The Sapere family indictments were dismissed, however, in June, 1974, after two wiretaps upon which they were based, made in October and November of 1971, were determined by the district court to have been improperly authorized under the Supreme Court's decision in *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).[2]

Before the gambling wiretaps came into existence, the Internal Revenue Service (IRS) Intelligence Division in Hartford had commenced its own criminal investigation of appellant's father, Dominic Sapere. Special Agent Charles Ruffini of the IRS Intelligence Division was assigned to this investigation in August, 1971, and in the course of exploring intrafamilial financial transactions appellant Vincent's activities also came under IRS scrutiny. The Dominic and Vincent Sapere IRS cases became joint investigations, with Agent Ruffini working alone in Intelligence but aided by Revenue Agent Gerardi of the Audit Division in computations of tax liabilities of the father and

---

1. This appeal follows the procedure recently approved in *United States v. Faruolo,* 506 F.2d 490, 491 n.2 (2d Cir. 1974). *See United States v. Pond,* 523 F.2d 210, 212 (2d Cir. 1975).

   The question in "taint" cases is whether the evidence to which objection is made has been "come at" by exploitation of illegal police conduct or by sufficiently different or distinguishable means to be pure or "purged." *See Brown v. Illinois,* 422 U.S. 590, 597–99, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

2. The first wiretap was authorized against Michael Ferro and Anthony Cianfaglione on October 12, 1971, and ended on October 20, 1971. The second wiretap which was founded in part on the prior tap was authorized on November 11, 1971, for 15 days against Dominic and Emil Sapere, appellant's father and uncle. These wiretaps were rendered invalid under *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), because the Attorney General of the United States had not properly performed his statutory duties in approving the authorization. The Government concedes the illegality of these wiretaps on this appeal.

son for failure to file or filing of fraudulent tax returns.[3]

Sometime after September, 1971, Ruffini learned from FBI Agent Richard Ludwig of the October-November, 1971, wiretaps which were being conducted by the FBI and involved information relating to the Saperes. Both agents agreed that Ruffini should receive no wiretap information regarding either Dominic or Vincent Sapere because of the risk that the legality of the wiretaps might later come into question. At the time the wiretap law was new and no authoritative decisions as to its scope or legality had been made. Ruffini testified subsequently that in fact he did not expect the wiretap information would aid his investigation as it was concerned solely with financial activities up to December 31, 1970. In 1972 Ruffini did examine FBI reports concerning the Saperes, but all the information in these reports also pre-dated the wiretaps.

Until December of 1972 the IRS investigation of appellant was preserved from contact with the wiretap information by the "Chinese-Wall" agreement between Ludwig and Ruffini, but in that month the Boston Strike Force decided to see if civil tax assessments could be sought upon the gambling income of the defendants in the ongoing gambling indictment. To that purpose the Force advised Supervisor Thomas Simpson of the IRS Audit Division in Hartford that the FBI had wiretap information which might substantiate jeopardy assessments. Simpson in turn sent Revenue Agent Mastromarino to the FBI, and hence to Agent Ludwig to review the information. When Mastromarino arrived on December 14, 1972, Ludwig contacted Ruffini to report the Audit Division's intrusion into the wiretap information. Ruffini reported this intrusion immediately to his supervisor in Intelligence, Group Manager Scalise. Scal-

ise ordered Ruffini to have no contact with the wiretap evidence and no discussions with any agents who did. The same day Scalise informed Supervisor Simpson of the Audit Division that Intelligence would in no way consider accepting wiretap information in either Dominic Sapere's or in appellant's case, a policy which Scalise invariably applied in criminal tax investigations and which was, in the light of *Giordano,* as it turned out, a very wise one. Since, as Simpson testified, the Audit Division was required to comply with all such orders by Intelligence in joint investigations, Simpson accepted Scalise's directive and ordered Ruffini's Audit partner Gerardi to avoid all contact with the wiretap information. Simpson also ordered Audit Agent Mastromarino who had initially viewed the wiretap information to drop Dominic Sapere and appellant, Vincent Sapere, as potential subjects for assessments on gambling income, to ignore further wiretap information relating to them, and to refrain from discussing the wiretap revelations with other agents, most particularly with Ruffini's Audit assistant, Gerardi.

Agent Ruffini's report regarding Dominic Sapere was filed with his supervisor, Scalise, on December 14, 1972, and Judge Clarie found in his memorandum opinion that regarding this case "there was no evidence whatsoever which had any traceable connection to the wiretap information."[4] Appellant introduced excerpts from the wiretaps at the suppression hearing, as well as Agent Ruffini's list of exhibits accompanying his report on appellant in an effort to establish that references to the same names and places in both the exhibit list and the wiretaps created the inference that the tainted material had been used by Ruffini. Judge Clarie decided, however, that no such inference had been demonstrated, and that the possession of wiretap information by

---

**3.** Both the Dominic and Vincent Sapere tax cases, as well as the Sapere gambling case, were prosecuted by the Hartford Field Office of the Boston Strike Force.

**4.** No further action was taken by the IRS in Hartford in Dominic's case after December 21,

1972, and Agent Ruffini's and Group Manager Scalise's recommendation was sent to the New York Regional Office to be forwarded to the Tax Division in Washington, D. C., for the ultimate decision whether to prosecute, as was the required procedure.

Agent Mastromarino in the IRS Audit Division did not necessarily merge it into the hands of the Government agency to create a taint in Gerardi's and Ruffini's work. Judge Clarie also found that even though the Government prosecutor had access to the wiretap information as well as the IRS data and possessed the authority to request further investigation, this neither effected a "merger of prosecutorial action" which contaminated the tax case evidence nor was prejudicial to the appellant's receiving a fair trial. We agree with each of his conclusions, and therefore affirm.

■■■ The Government properly concedes that under *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), it has the ultimate burden of persuasion to show that its evidence in the tax prosecution of appellant was not tainted through a connection to the illegally procured wiretap information. *Id.* at 183, 89 S.Ct. 961. *Alderman* further established, however, that appellant has the initial burden of producing specific evidence demonstrating taint in a substantial portion of the Government's case against him. *Id. See also Nardone v. United States,* 308 U.S. 338, 342, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Until appellant had met that burden, the Government was not required to show the independent origin of its proof. After a careful review of all the testimony and the exhibits, we conclude that, as Judge Clarie found, the appellant did not discharge his initial burden of exposing a chink in the Chinese wall around Agents Ruffini and Gerardi through which the wiretap information slipped. It is therefore unnecessary to consider whether the Government sufficiently demonstrated the independent sources of its case against the appellant.

Appellant points to several instances where references or remarks appearing in the wiretaps coincide in some way with items mentioned in Agent Ruffini's "list of exhibits" which, along with a list of 107 witnesses, constituted the Government's planned case against the appellant. For example, the "Goodman Insurance Agency," the "Hearthstone Restaurant" and "Ronald Michaels" appear in the transcripts of the taped conversations and in the exhibit list. But the source of these items, as stated in the list and confirmed by Agent Ruffini's testimony, for both the agency and the restaurant was Ruffini's analysis of microfilm copies of appellant's checks and deposits at the Hartford National Bank. Ruffini's list cites the source of the "Ronald Michaels" reference as being the investigation of Dominic Sapere and his tax return; this is quite plausibly the case, since Michaels was an accountant who signed one of Dominic Sapere's tax returns. There is nothing inherently suspicious about these or any other of the identical or similar items in the list and transcripts appellant points to, and they do not even begin to create an inference that the source of the items must have been the illegal wiretaps.[5] None of the items are pieces of information which would have been unlikely to have been discovered in the independent investigation of appellant's accounts which Ruffini and Gerardi testified to making. In the face of the unanimous testimony of Ludwig, Gerardi, Ruffini, Mastromarino, Simpson, and Scalise establishing the conscientious effort by the Government to keep appellant's tax prosecution quarantined from exposure to the wiretap material, appellant's demonstration of a few identical references within the lengthy exhibit list and the lengthier wiretap transcripts is wholly unpersuasive evidence of ineffectual prophylaxis.

Appellant refers us to *United States v. Magaddino,* 496 F.2d 455 (2d Cir. 1974), for the proposition that where two branches of a single Government agency carrying on a joint investigation—there the Buffalo and Niagara Falls offices of the FBI—work in close cooperation, and an agent for one relies on evidence illegally obtained by the other, taint of the whole investigation is

---

**5.** Another example is that a wiretap transcript refers to "oxies." A mutual benefit association, we are told in appellant's brief, is an "oxy." The list of exhibits mentions several mutual benefit associations by name. The source of these references was, however, the untainted investigation of Dominic Sapere's tax returns.

established. In appellant's case, however, unlike *Magaddino,* there were two separate, independent investigatory operations in the IRS relating to appellant: Audit Agent Mastromarino's gambling income tax assessment probe upon advisement of the Boston Strike Force, and Intelligence Agent Ruffini's and Audit Agent Gerardi's joint investigation of criminal tax law violations by Dominic and Vincent Sapere. According to the testimony of all the agents involved, these two investigatory operations were deliberately restricted from any intersection or cross-exchange of information. The wiretaps were kept at the FBI with only Mastromarino of the IRS having been exposed to them, with his use of them proscribed by Audit Division Group Manager Simpson from probing information concerning appellant, and with his reporting of the wiretap information explicitly circumscribed by Intelligence Chief Scalise to avoid conveyance to Ruffini and Gerardi. As this court decided in *United States v. Cole,* 463 F.2d 163, 171–74 (2d Cir.), *cert. denied,* 409 U.S. 942, 93 S.Ct. 238, 34 L.Ed.2d 193 (1972), the knowledge of wiretap information by one agent cannot be imputed to other agents where the Government meets its burden of showing that no communication of the knowledge has occurred. Here no communication from either Mastromarino or FBI Agent Ludwig was evident and no reliance upon their contact with the wiretap evidence by Ruffini and Gerardi can be implied. Judge Clarie's finding to this effect must stand. *See United States v. Boston,* 508 F.2d 1171, 1179 (2d Cir. 1974), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975).

Appellant's attempts to demonstrate access to and use of the wiretaps in the Strike Force itself and hence to its representatives in the IRS and to Ruffini and Gerardi were likewise unsuccessful at the *Alderman* hearing. Agent Hageman, Strike Force representative in the Audit Division, and Agent Morgan, representative in the Intelligence Division, both testified that they knew of the instructions that Ruffini's investigation was to be protected from any contact with the wiretap material and that they themselves had communicated no wiretap information to Ruffini or Gerardi. Their testimony was credited by the district judge.

One final argument for the establishment of taint by the appellant is also unprevailing. Assistant United States Attorney Paul Coffey was the Strike Force attorney in charge of both the Sapere gambling and tax prosecutions, had access to the FBI wiretap information, and had authority to request further investigation by the IRS in the tax prosecution. On the basis of *United States v. Polizzi,* 500 F.2d 856 (9th Cir. 1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975), appellant argues that where a prosecutor has knowledge of illegally gained evidence taint is thereby created in the otherwise independently marshalled proof of the investigating agents. The *Polizzi* court's holding on this subject, however, 500 F.2d at 913, was limited to the point that when a prosecutor denies knowledge of wiretap information it is unnecessary that FBI personnel conducting the taps be called to testify, and sufficient that a defendant receive for his *Alderman* hearing the names of officials with access to the wiretaps for cross-examination of the prosecutors.[6] As Judge Clarie noted, the evidence here disclosed that except for requesting that the Audit Division view the wiretap transcripts for potential gambling tax assessments, Attorney Coffey gave no directions relating to Agent Ruffini's tax case preparation. It was not furthermore, Attorney Coffey but the Tax Division of the IRS in Washington, D. C., which made the final determination

---

6. The inference cannot be drawn from *United States v. Polizzi,* 500 F.2d 856, 913 (9th Cir. 1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975), that if a prosecutor admits knowledge of illegally gleaned information, the prepared case becomes tainted. The holding was rather only that in such case the FBI monitors might then be properly required to testify. Appellant has made no claim here that monitors of the wiretaps should have been required to testify; such a claim would indeed not illuminate the issue of the existence of taint being created by Attorney Coffey's actions in the prosecution of appellant's case.

as to whether appellant's case should be prosecuted. As was true in *United States v. Cole, supra,* 463 F.2d at 172–73, where a prosecutor has knowledge of illegal inadmissible evidence but does not use or direct its use in the preparation of a case for prosecution, taint is not created by his knowledge.

We conclude that the Government's thorough effort to shield the tax prosecution of appellant from contact with the wiretap material was a successful one, and that since appellant failed to meet his burden of showing taint in the Government's case against him, his motions to suppress and dismiss the case were properly denied.

Judgment affirmed.